**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

Neil Richardson,

                    Plaintiff,

v.

Willy L. Pham and Bi-Li Aviation, LLC,

                    Defendants.

Civil No. 3:23-cv-01480 (TOF)

July 14, 2026

**RULING ON DEFENDANTS' MOTION**
**TO STAY PROCEEDINGS ON EXECUTION OF JUDGMENT**

On March 31, 2026, the Court entered judgment in the amount of $315,000 against the defendants, Willy L. Pham and Bi-Li Aviation, LLC (together, "Defendants") after a bench trial. (Judgment, ECF No. 124.)  Twenty-one days later, the Defendants initiated an appeal in the United States Court of Appeals for the Second Circuit.  (Notice of Appeal, ECF No. 127.)  The plaintiff, Neil Richardson, then applied to the Clerk of the Court for writs of execution.  (Applications, ECF Nos. 139, 140.)

The Defendants have now moved "for a stay of proceedings to execute on the Judgment" pending their appeal.  (Mot. to Stay, ECF No. 141, at 1) ("Motion").  But Rule 62(b) of the Federal Rules of Civil Procedure generally requires the posting of a bond or other security before enforcement proceedings may be stayed (*see* discussion, Section III.A *infra*), and the Defendants have neither posted security nor indicated that they are willing and able to do so.  And while the Court may excuse a judgment debtor from the security requirement in an appropriate case, the Defendants have not demonstrated that this is such a case.  (*See* discussion, Section III.B *infra.*)  For these reasons, and for the other reasons cited below, the Defendants' Motion will be denied.

1

I.    BACKGROUND

"This lawsuit arises from a failed deal about a private airplane." *Richardson v. Pham*, No. 3:23-cv-1480 (TOF), 2026 WL 883913, at *1 (D. Conn. Mar. 31, 2026). The plaintiff, Neil Richardson, "is a wealthy Englishman who decided to explore the merits of purchasing an aircraft in order to travel around Europe." *Id.* (citation and quotation marks omitted). He developed a relationship with an American aircraft consultant named Willy Pham, and with Pham's company, Bi-Li Aviation, LLC ("Bi-Li"). *Id.* At Pham's instigation, Richardson wired a refundable $100,000 deposit to an escrow company in anticipation of purchasing a plane. *Id.* at *6. He also sent Pham a $15,000 advance against documented expenses. *Id.* at *8-9. Richardson later developed a serious health condition, however, and he decided not to go through with an airplane purchase. *Id.* at *7.

When Richardson asked Pham to return the deposit, he learned that Pham had maneuvered it out of escrow and into Bi-Li's bank account through an elaborate identity-theft scheme. *See id.* at *9-12 (describing scheme). He therefore filed a complaint in the United States District Court for the District of Connecticut against both Pham and Bi-Li, alleging a violation of Section 52-571h of the Connecticut General Statutes, which is entitled "[a]ction for damages resulting from identity theft." *Id.* at *2, 13. Richardson's complaint also asserted a common-law conversion claim with respect to the $100,000 deposit; a common law conversion with respect to the $15,000 advance, which Pham had likewise failed to return; a breach of fiduciary duty claim; and a claim for constructive fraud. *Id.*

The parties tried the case to the Court, and Pham admitted each element of Richardson's civil identity theft claim on the stand. *Id.* at *3, 13. Specifically, Pham admitted that (1) he used Richardson's name to set up a sham "neil.a.richardson1963@gmail.com" email account with

2

Google; (2) posing as Richardson, he sent emails from that account asking the escrow agent to send the deposit to Bi-Li's account, rather than to Richardson's account from which the deposit had originated; (3) when the agent asked for more documentation, he doubled down on the scheme by sending her copies of Richardson's identity documents, which he had acquired earlier in the parties' relationship, to convince her that she was indeed corresponding with Richardson; and (4) he did so for the purpose of inducing the agent to direct the refund to Bi-Li.[1]  *Id.* at \*13.  And although Pham argued that Richardson had consented to the use of his documents to secure the return of the deposit, "no reasonable person could reach any conclusion other than that Pham knew he was not authorized to use Richardson's personal information in the way that he did."[2]  *Id.* at \*14.  Pham also failed to prove that he had incurred any expenses, yet he did not return any portion of the $15,000 advance to Richardson.  *Id.* at \*8-9.

After post-trial briefing, the Court found for Richardson on his civil identity theft and conversion claims in a forty-nine page memorandum of decision.[3]  *See generally id.*  Because the Connecticut civil identity theft statute provides for treble damages, the Court awarded Richardson $315,000 – the $100,000 deposit trebled, plus the $15,000 advance.  *Id.* at \*20-22.  The Clerk of the Court entered judgment in that amount, jointly and severally against Pham and Bi-Li, on March 31, 2026.  (Judgment, ECF No. 124.)  Richardson then moved to amend the judgment to award prejudgment interest, and he also moved for an award of attorneys' fees under Section 52-571h of

---

[1]    The Court credited this testimony, but "except for those instances in which he made admissions against his own interest," it "found Pham to be almost entirely lacking in credibility." *Id.* at \*5 n.3.

[2]    Even on Pham's "fanciful telling" of the story, in which he was authorized to use Richardson's documents to obtain the return of the deposit *to Richardson,* Pham did not even attempt to argue that Richardson had consented to the transfer of his $100,000 deposit *into Bi-Li's account*. *Id.* at \*14.

[3]    The Court did not find for Richardson on his breach of fiduciary duty and constructive fraud claims. *Id.* at \*16-18.

the Connecticut General Statutes.  (Mot. to Amend J., ECF No. 125; Mot. for Attys.' Fees, ECF No. 126.)  The parties recently completed briefing on those motions, and they remain *sub judice* as of this writing.

On April 21, 2026, the Defendants filed a Notice of Appeal to the Second Circuit.  (Notice of Appeal, ECF No. 127.)  They plan to "challenge both the amount of the judgment as well as the factual and legal basis for it."  (Motion at 1.)  The Second Circuit docketed their appeal under case number 26-1043, but it stayed the matter because the prejudgment interest and attorneys' fee motions had been filed in this Court.  (Notice of Required Case Status Update, ECF No. 8.1, Case No. 26-1043) (2d Cir. Apr. 29, 2026) (citing Fed. R. App. P. 4(a)(4)).  Richardson then applied for writs of execution on June 25, 2026.  (Applications, ECF Nos. 139, 140.)

The next day, the Defendants filed the instant motion to stay enforcement proceedings.  (*See generally* Motion.)  The Motion was also styled as an objection to Richardson's application for writs of execution.  (*Id.* at 1.)  The Defendants did not post a bond or other security, nor did they state that they were willing and able to do so.  (*Id.*)  Instead, they argued that the relevant rules entitle them to an unbonded stay.  (*Id.*)  They also argued in the alternative that, if they are not entitled to an unbonded stay as a matter of right, the Court should waive the security requirement in an exercise of its discretion.  (*Id.* at 2-3.)

Richardson has yet to respond, and his period for doing so has not expired.  *See* D. Conn. L. Civ. R. 7(a)(2) (stating that opposition memoranda are due within twenty-one days).  Yet because the Defendants bear the burden to show why enforcement proceedings should be stayed without security (*see* discussion, Section III.B *infra*), the Court deems it unnecessary to wait for Richardson's opposition paper.  *See* D. Conn. L. Civ. R. 7(a)(4) ("To expedite a decision or for

4

other good cause, the Court may rule on a motion before expiration of the period ordinarily permitted for filing opposition papers."). The Motion is ripe for decision.

## II.  APPLICABLE LEGAL PRINCIPLES

"[A]ll orders and judgments of courts must be complied with promptly." *Maness v. Myers*, 419 U.S. 449, 458 (1975). "If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must promptly comply with the order pending appeal." *Id.* Put differently, "[t]he orderly and expeditious administration of justice by the courts requires that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'" *Id.* at 459 (quoting *United States v. United Mine Workers*, 330 U.S. 258, 293 (1947)).

Motions to stay enforcement proceedings are governed by Rule 62 of the Federal Rules of Civil Procedure. Rule 62(a) generally provides that "execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise[,]" Fed. R. Civ. P. 62(a), but the thirty-day automatic stay period in this case expired on April 30, 2026. (*See* Judgment, ECF No. 124.) Otherwise, a judgment debtor "may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). "The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security." *Id.*

## III.  DISCUSSION

The Defendants raise several arguments in their four-page Motion. The Motion is not a model of organizational clarity despite its brevity, but the Court nevertheless observes two themes running through it. First, the Defendants evidently contend that any litigant who is on the losing end of a judgment in the District of Connecticut is entitled to a stay pending appeal as a matter of right, without posting security. (*See* Motion at 2) (stating without qualification that Rule 62

"provides for a stay of a civil judgment while an appeal is pending"); (*see also id.* at 3) (contending that the combined operation of Fed. R. Civ. P. 62(f) and Conn. Prac. Bk. § 61-11 require a stay without security).   Second, although they acknowledge that Rule 62(b) "allows" the Court to require security before granting a stay, they urge the Court not to require one in this case.  (*Id.* at 2, 4.)  They say that unless execution is stayed, they will effectively lose their right to appeal.  (*Id.* at 4.)  Neither set of arguments is persuasive.  The Court will address each set in turn.

A.      **Stay as a Matter of Right**

To the extent that the Defendants are contending that all judgment debtors are entitled to a stay pending appeal as a matter of right, without first posting security, they are plainly mistaken. Rule 62(b) clearly provides that, "[a]t any time after a judgment is entered, a party may obtain a stay *by providing a bond or other security.*"  Fed. R. Civ. P. 62(b) (emphasis added).   Courts around the country therefore uniformly hold that parties in the Defendants' position ordinarily must post a bond if they wish to stay execution of a money judgment while they appeal.  *See, e.g., Salt & Light Energy Equip. LLC v. Origin Bancorp, Inc.*, No. 3:22-cv-654-N, 2025 WL 3013565, at *3 (N.D. Tex. Oct. 27, 2025) ("Under Rule 62(b), the Fifth Circuit has long held that a party seeking a stay of a monetary judgment must post a supersedeas bond."); *Microbot Med., Inc. v. Mona*, No. 19-cv-3782 (GBD) (RWL), 2023 WL 8699182, at *2 (S.D.N.Y. Dec. 15, 2023) ("In short, if Mona wishes to stay execution of the money judgment, he must post a bond for the full amount of the judgment."); *Sioux Steel Co. v. Prairie Land Mill Wright Servs.*, No. 16-cv-2212, 2023 WL 5804194, at *11 (N.D. Ill. Sept. 7, 2023) ("Ordinarily, to get a stay of execution of judgment, the movant must post a supersedeas bond for the full amount of the judgment."); *United States ex rel. Caputo v. Tungsten Heavy Powder, Inc.*, No. 3:18-cv-2352 W (WVG), 2022 WL 21840856, at *2 (S.D. Cal. Aug. 2, 2022 ("[I]f Defendant wants a stay, it must post a bond.");

6

*Zurich Am. Ins. Co. v. Staffing Concepts Nat'l Inc.*, No. 8:14-cv-775-T-23AAS, 2017 WL 4518662, at \*2 (M.D. Fla. Oct. 10, 2017) (denying a motion for stay of execution because the movants "failed to address the general requirement that they must post security to stay proceedings"); *Atheridge v. Iglesias*, 464 F. Supp. 2d 19, 23 (D.D.C. 2006) ("Because the stay operates for the appellant's benefit and deprives the appellee of the immediate benefits of his judgment, a full supersedeas bond should be the requirement in normal circumstances.") (internal quotation marks omitted).

To the extent that the Defendants are contending that all *Connecticut* federal judgment debtors are entitled to a stay without posting security, they are likewise mistaken. They cite Rule 62(f), which provides that "[i]f a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution as the state court would give." Fed. R. Civ. P. 62(f). And they cite Section 61-11 of the Connecticut Practice Book (Motion at 3), which does provide an automatic stay of state court enforcement proceedings pending appeal. *See* Conn. Prac. Bk. § 61-11(a). But Rule 62(f) does not apply here, because a judgment, standing on its own, is not a lien under Connecticut law. *See* Conn. Gen. Stat. § 52-380a(a) (stating that a judgment becomes a lien on real property only when a judgment-lien certificate is recorded in the town clerk's office where a judgment debtor's real property lies); Conn. Gen. Stat. § 52-355a(a) (stating that a judgment becomes a lien on nonexempt personal property only when a judgment-lien certificate is filed with the Secretary of the State); *see also Bank of New York Mellon v. Worth*, No. 3:13-cv-1489, 2015 WL 1780719, at \*4 (D. Conn. Apr. 20, 2015) ("[I]t is well-established that a judgment does not automatically create a lien under Connecticut law."). And while Rule 62(f) can nevertheless come into play when "circumstances are such that the judgment creditor can readily establish a lien that will be adequate to secure the

7

judgment," *id.* (citing *Fed. Deposit Ins. Corp. v. Ann-High Assocs.*, No. 97-60955, 1997 WL 1877195, at *4 (2d Cir. Dec. 2, 1997)), the Defendants provide no reason to suppose that is the case here. They provide no information about their real or personal property, let alone $315,000 worth of property that can be "readily" subjected to a lien. (*See generally* Motion.)

The Defendants' other arguments for a stay as a matter of right may be quickly dispatched. To the extent that their allusion to Section 61-11 of the Connecticut Practice Book was intended to suggest that this Court must follow Connecticut procedural rules, irrespective of Rule 62(f), that claim is of course mistaken. *See Shady Grove Ortho. Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) ("[T]he Federal Rules of Civil Procedure . . . appl[y] in all civil actions and proceedings in the United States district courts[.]") (citation and quotation marks omitted); *Fessler v. Porcelana Corona de México, S.A. de C.V.*, No. 4:19-cv-248, 2020 WL 3498872, at *2 (E.D. Tex. June 29, 2020) (noting that "Rule 62 of the Federal Rules governs the stay of proceedings in enforcing a judgment" even though Rule 69 provides that a judgment's execution "must accord with the procedure of the state where the court is located"); *see also Saadeh v. Kagan*, No. 20 CIV. 1945 (PAE), 2024 WL 5514998, at *2 (S.D.N.Y. Feb. 14, 2024) (applying Rule 62 in deciding a motion for a stay in a diversity-jurisdiction case). And to the extent that the Defendants' comments about this Court's authority were intended to suggest that a District Court loses the power to allow enforcement proceedings to go forward once an appeal is filed (Motion at 1), that claim is mistaken as well. Indeed, Rule 8 of the Federal Rules of Appellate Procedure expressly contemplates that the District Court, and not the Court of Appeals, will decide in the first instance whether a judgment debtor is entitled to a stay. Fed. R. App. P. 8(a). In short, the Defendants are not entitled to a stay of enforcement proceedings as a matter of right, and their arguments to the contrary are rejected.

### B.    Discretionary Waiver of the Security Requirement

Although the Defendants' Motion repeatedly suggests that they believe they are entitled to an unbonded stay as a matter of right, elsewhere they acknowledge that "Rule 62(b) allows the Court to require a bond or other security upon granting of a stay of the judgment." (Motion at 2.) They say that "[t]he clear text of" Rule 8 of the Federal Rules of Appellate Procedure "allows the district court the discretion to issue a stay without a bond." (*Id.* at 3) (citing *Fed. Prescription Serv. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980)). And they correctly identify five non-exclusive factors that the Second Circuit has directed District Courts to consider in exercising that discretion. (*Id.* at 3) (citing the five factors identified in *In re Nassau County Strip Search Cases*, 783 F.3d 414, 417-18 (2d Cir. 2015)). Problematically, however, the Defendants make no effort to explain how any of those factors weigh in favor of the stay they seek.

In considering whether to waive the security requirement, courts in this Circuit apply the five so-called "*Nassau*" factors. Those factors are: "(1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post bond would place other creditors of the defendant in an insecure position." *In re Nassau Cnty. Strip Search Cases*, 783 F.3d at 417-18 (quoting *Dillon v. Chicago*, 866 F.2d 902, 904-05 (7th Cir. 1988); *see also Mircal v. Flacks*, No. 1:25-CV-622-GHW, 2026 WL 654633, at *1-4 (S.D.N.Y. Mar. 8, 2026); *Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 604 F. Supp. 3d 1, 11 (D. Conn. 2022), *rev'd on other grounds*, 112 F.4th 93 (2024); *Arch Ins. Co. v. Centerplan Constr. Co., LLC*, No. 3:16-cv-1891 (VLB), 2020 WL 8083658, at *2-4 (D. Conn. Jan. 31, 2020).

9

This list of factors is "non-exclusive," *In re Nassau Cnty. Strip Search Cases*, 783 F.3d at 417, and District Courts sometimes consider others. *E.g., Mircal*, 2026 WL 654633, at *4 (considering traditional stay factors in addition to *Nassau* factors). Whether the focus is on five factors or more than five, however, the burden "lies with the moving party to demonstrate why the Court should waive the standard requirement that the appellant post a full supersedeas bond." *De la Fuente v. DCI Telecommunications, Inc.*, 269 F. Supp. 2d 237, 245 (S.D.N.Y. 2003).

Furthermore, courts must keep the goals of Rule 62 in view when deciding whether to waive the security requirement. As Judge Hellerstein has explained, "[c]ase law makes clear that the *Nassau* factors are a tool geared toward ensuring a meaningful outcome for the prevailing party, and not a device for easing the judgment burden on the losing party." *Petersen-Dean, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 19 CIV. 11299 (AKH), 2020 WL 1989493, at *3 (S.D.N.Y. Apr. 24, 2020). It is therefore unsurprising that "[t]he vast majority of courts in this district applying [the *Nassau*] factors have denied a motion to stay enforcement without a supersedeas bond." *Penzo v. Consolidated Edison Co. of New York, Inc.*, No. 19-CV-07478 (MKV), 2025 WL 369708, at *3 (S.D.N.Y. Feb. 3, 2025) (listing cases); *cf. also China AI Cap. Ltd. v. DLA Piper LLP (US)*, No. 21-CV-10911 (VM) (VF), 2026 WL 456797, at *4 (S.D.N.Y. Feb. 18, 2026) ("a stated inability to post a bond is often 'determinative' of the inquiry under Rule 62(b) and weighs decisively against waiver of the bond requirement"); *Saadeh*, 2024 WL 5514998, at *2 (denying motion to stay execution during pendency of appeal where movant had stated he was unable to pay the judgment or post a bond, nor had he provided an acceptable alternative means of securing the judgment against him).

In this case, the Defendants cite *Nassau* and its five factors, but they make no effort whatsoever to explain how those factors weigh in favor of waiving the security requirement. (*See*

10

*generally* Motion.)   Instead, they say that if Richardson is allowed to execute on his judgment, they will somehow be denied their right to appeal – but they do not explain how.  (*Id.* at 4.)  They briefly note that Richardson is not an American citizen, and they speculate that if he were to execute on the judgment and they were to prevail in their appeal, "[a]ny sums he receives by way of execution cannot likely be returned[.]"  (*Id.* at 2.)   But they provide no authority for the proposition that this is a relevant consideration, and in any event it is factually unsupported.  Although Richardson is a British subject, he owns considerable property in the United States.  *See Richardson*, 2026 WL 883913, at \*4 (noting Richardson's property holdings in California).

The record before the Court does not support the claim that the *Nassau* factors weigh in favor of relaxing the security requirement.  To begin with, the trial testimony and exhibits suggest that the collection process may be complex and lengthy, because Pham operates many different LLCs and moves money between them without any evident regard for corporate formalities.  (Trial Tr., ECF No. 116, at 273:23-274:22 and 323:2-9; *see also* Pl.'s Tr. Ex. 36.)  The Court also has no confidence in the availability of funds to pay the judgment, nor is the Defendants' "ability to pay the judgment . . . so plain that the cost of a bond would be a waste," because they have provided no information about their finances despite having every incentive to do so.  (*See generally* Motion.)  And the Defendants have likewise supplied no evidence that execution would place other creditors in an insecure position.  (*Id.*)  In summary, the Defendants have provided no information that would support waiving the security requirement.

## C.    Other Arguments

Finally, the Defendants attempt to invoke Rule 62.1 (Motion at 4), but this effort is no more persuasive than the others.  Rule 62.1 provides that a District Court may deny, defer consideration of, or provide an indicative ruling on any "timely motion . . . that the court lacks authority to grant

11

because an appeal has been docketed and is pending[.]" Fed. R. Civ. P. 62.1(a). The Defendants want this Court to indicate that it would grant a motion to stay execution on the judgment. (Motion at 4.) But Rule 62.1 applies only to motions that the District Court "lacks authority to grant[.]" Fed. R. Civ. P. 62.1(a), and District Courts are expressly empowered by Rule 8 of the Federal Rules of Appellate Procedure to decide motions to stay judgments. Fed. R. App. P. 8(a)(1). Moreover, even if this were a situation where Rule 62.1 applied, the Court would not give the Defendants the indicative ruling that they seek, for the above-stated reasons. Therefore, the defendant's invocation of Rule 62.1 is inapposite.

## IV.    CONCLUSION

For the foregoing reasons, the Motion of the Defendants, Willy L. Pham and Bi-Li Aviation, LLC, to stay proceedings to execute on the judgment is **DENIED**, and their objection to the Applications for Writs of Execution is **OVERRULED.** The denial of their Motion is without prejudice to a renewed motion for a stay if they "provid[e] a bond or other security" in an amount and form acceptable to the Court. To allow the Defendants a reasonable period to post that security and seek the Court's approval thereof, the Clerk is respectfully directed to refrain from signing and returning the pending Applications for Writ of Execution until July 28, 2026. It is so ordered.

Entered at Hartford, Connecticut this 14th day of July, 2026.

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge